# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RICHARD COLON, on behalf of himself and all
others similarly situated,

      Plaintiff,

v.

SE INDEPENDENT DELIVERY SERVICES
INC.,

      Defendant.

Case No. 8:17-cv-1578-JDW-MAP

## DEFENDANT'S OPPOSITION
## TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1675914.1

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

THE FACTUAL RECORD ......................................................................................................3

    A.    Colon Admits That Refusal Claims Turn on Individualized Proof and That He Lacks Such Proof ......................................................................................3

    B.    The Record Confirms That Refusal Claims Turn on Individualized Proof .......4

    C.    There Is No Evidence That Colon Has a Helper Special Claim .......................7

    D.    The Evidence Regarding Helper Special Claims Is Individualized ..................8

ARGUMENT AND CITATION OF AUTHORITIES ...........................................................10

    I.    Colon Bears the Burden of Proof on This Motion ..........................................10

    II.    Colon Has Failed to Prove His Standing to Assert the Helper Special Claim ...............................................................................................................10

    III.    The Proposed Class Is Not Adequately Defined or Clearly Ascertainable Because Individual Inquiries Would Be Required to Identify Class Members ........................................................................................................11

    IV.    Colon Has Failed to Prove Numerosity ..........................................................13

    V.    Colon Has Failed to Prove Commonality ........................................................14

    VI.    Colon Has Failed to Prove Typicality .............................................................15

    VII.    Colon Has Failed to Prove Adequacy .............................................................16

    VIII.    Colon Has Failed to Prove That Common Questions Predominate .................16

    IX.    Colon Has Failed to Prove Superiority ...........................................................19

**INTRODUCTION**

Plaintiff Richard Colon, a terminated independent contractor who delivered furniture for Defendant SE Independent Delivery Services Inc. ("SEIDS"), raises two sets of individualized complaints about his pay.  First, he claims that, in "certain instances," when he completed a delivery, return, or exchange, SEIDS erroneously listed the transaction as a refusal, meaning he was paid a refusal rate of $9 rather than a percentage of the retail value of the furniture (the "Refusal Claim").  (Dkt. No. 46 at 8).  Second, he claims that, on certain occasions, he negotiated a specific fee with his managers for helping out other contractors, but SEIDS did not pay him for the help (the "Helper Special Claim").

Importantly, Colon does not and cannot claim that SEIDS had a policy of misclassifying all deliveries, returns, and exchanges as refusals or failing to pay for all Helper Specials.  Indeed, although he worked for SEIDS for almost four years, he submits evidence regarding only one refusal entry on his settlement sheets that he claims was classified incorrectly.  And despite securing four extensions of the deadline for filing his class motion, (Dkt. Nos. 28, 32, 37, 45), he offers no proof that any refusal entry on any other contractor's settlement sheets is erroneous.  Further, he does not identify any Helper Special for which SEIDS failed to pay any contractor (including himself).  Nevertheless, he seeks to turn his personal grievances into a class action based on the specious assertion that by proving his own claims, he will prove the claims of a class.

He will not.  Colon's claims present individualized inquiries that can be resolved only with individualized proof.  Whether a customer refused or accepted a particular delivery,

return, or exchange (and thus whether SEIDS correctly classified the transaction for pay purposes) is a question that can be answered only with evidence specific to that transaction. Evidence regarding whether Customer A refused or accepted a delivery on one date proves nothing about whether Customer B refused or accepted a different delivery on a different date. Colon's class motion illustrates this point perfectly: He files one affidavit from one customer (Lovely Flournoy) about one delivery, but that affidavit proves nothing about any other delivery by Colon or any other contractor. Similarly, evidence regarding whether SEIDS paid Colon for a Helper Special on one date proves nothing about whether it paid a different contractor for a different Helper Special on a different date. There simply is no common answer and no common proof as to whether SEIDS misclassified a particular delivery, return, or exchange as a refusal or failed to pay for a particular Helper Special.

Colon does not cite **any** common evidence to prove his claims. He discusses at length the unremarkable facts that SEIDS uses standardized contracts and that its divisions have some standardized pay policies. But those facts do absolutely nothing to prove that SEIDS misclassified any delivery or failed to pay for any Helper Special; they do not address the liability questions in this case.

Because Refusal Claims and Helper Special Claims turn on individualized inquiries and individualized proof, class treatment of those claims would be unmanageable. A jury would have to review numerous transaction-specific documents (including Delivery Histories, Customer Service Notebooks, and Sales Orders) and hear testimony from numerous witnesses (contractors, customers, and managers) to resolve **each** claim. And

given the scope of the transactions Colon wants to challenge, a jury would have to perform this exercise hundreds of thousands of times.[1]  Colon's suggestion that he could hire an expert to review and rule on the evidence relating to liability for each transaction is absurd; a jury would be the finder of fact, and SEIDS would be entitled to contest the conclusions of this hypothetical expert with respect to every single transaction.

But Colon's suggestion is revealing:  Even he recognizes that proving his own claims would not prove anything for anyone else and that individualized determinations would still be needed to resolve the claims of any other contractor.  Colon thus fails the requirement, recognized by this Court, that "the named representatives must be able to establish the bulk of the elements of each class members' claims when they prove their own claims."[2]

## THE FACTUAL RECORD

### A.     Colon Admits That Refusal Claims Turn on Individualized Proof and That He Lacks Such Proof.

During his November 3, 2017 deposition, Colon candidly admitted that, without reviewing documents specific to each refusal entry on his settlement sheets, he could not determine whether any entry was accurate or erroneous, that is, whether the delivery, return, or exchange at issue was refused or accepted:  "[T]his paperwork right here [a settlement sheet] doesn't explain much.  Now, if we had the manifest for that day with the information on it, customer information and everything, I could really break it down better.  **Then I'll**

---

[1] Colon speculates that 433 refusal entries on his settlement sheets may be erroneous and claims there are 460-890 contractors in the putative class. Dkt. No. 46 at 2, 10.  If just 460 contractors each had 433 refusal entries, Colon would be challenging 199,180 separate transactions.

[2] *Branch v. Credit Union of Texas*, 2008 WL 11336300, at *4 (M.D. Fla. Dec. 29, 2008) (Whittemore, J.) (citation omitted).

1675914.1

3

**know what happened that day**.  This particular paperwork doesn't explain much."[3]  And he admitted that the same is true for other contractors:  "Q. And if you wanted to find out what another driver was allegedly owed for one of these refusals, you would have to get his or her manifest and do the same process; right?  A. Yes.  Q. Line by line?  A. Yes."[4]

Yet despite these admissions, Colon and his counsel did not request documents relating to whether Colon's deliveries were refused or accepted until March 26, 2018, just four days before they moved for class certification.[5]  And they never requested documents relating to whether deliveries performed by other contractors were refused or accepted.  They instead moved for class certification without citing **any** evidence, beyond the Flournoy affidavit, that any refusal entry on any settlement sheet is erroneous.  Colon's counsel have now admitted, in the course of a discovery conferral, that they do not know whether any other refusal entries on Colon's settlement sheets are erroneous:  "Until we see the back ups to the refusals we cannot gauge whether they were paid properly."[6]  In other words, Colon's lawyers want to undertake a belated fishing expedition to try to come up with a factual basis for allegations they have advanced in their pleadings for almost a year.

### B.  The Record Confirms That Refusal Claims Turn on Individualized Proof.

Colon and his counsel may have delayed asking for documents relating to whether his

---

[3] Ex. 1 (Deposition of Richard Colon) at 66-67 (emphasis added); *id.* at 67:4-10; *id.* at 223 ("The refusals, when I further received documentation then I can really pinpoint everything—then I could verify everything.").  Ex. 1 contains the pages of the Colon Deposition cited in this brief.  The full transcript of that deposition is in the record as Exhibit Q to Colon's class motion.

[4] *Id.* at 68-69.

[5] They try to bury this fact in a footnote, stating somewhat disingenuously that "documents showing whether a delivery was accepted" are "not available to attach to this Motion."  Dkt. No. 46 at 6-7 n.40.

[6] Ex. 2 (5/18/18 email from C. Turner).

1675914.1

4

deliveries were refused or accepted for a simple reason:  Those documents show that Refusal Claims turn on individualized proof and that a class proceeding would be unmanageable. Colon submits four of his settlement sheets with his class motion, Exhibits I-L.  Those sheets contain a total of eight "REFUSAL" entries for which he was paid $9 each (with two entries relating to Flournoy).[7]  SEIDS has now produced documents relating to whether each of those eight entries was refused or accepted.

Those documents demonstrate that Refusal Claims cannot be adjudicated on a class-wide basis.  For example, Colon asserts that Order 17228047EX, an exchange, was completed rather than refused.  To counter that assertion, SEIDS would introduce the Delivery History for that order, which reflects a "**Rejection Reason**" of "VENDOR DEFECT :DAMAGE."[8]  SEIDS would also introduce the Customer Service Notebook for the order.  The Notebook is a document in which entries are made about the status and progress of an order.[9]  For this order, the Notebook states, "DELIVERY DAMAGED MERCHANDISE PER MR **REFUSED**," and "CUST **REFUSED**."[10]  Further, SEIDS would cross-examine Colon about his recollection of this transaction, examine the customer about the transaction, call a records custodian, and call the employees who made the notations stating that the exchange was refused.  The jury would have to decide whether it believed Colon or believed SEIDS's documents and witnesses.

---

[7] Exhibit I lists refusals for Orders 17228047EX, 17211630, and 17203432EX.  Exhibit J lists a refusal for Order 19887310.  Exhibit K lists a refusal for Order 19452913.  Exhibit L lists a refusal for Order 19485727RT and two refusals for the Flournoy transaction.
[8] Ex. 3 (Declaration of Terri Harrington), Ex. A (emphasis added).
[9] *Id.* ¶ 5.
[10] *Id.*, Ex. B (emphasis added).

1675914.1

5

And all that is for just **one** refusal entry.  The jury would have to go through the same exercise for **each** refusal entry at issue.[11]  If the jury spent only ten minutes reviewing documents and hearing testimony about each entry, and Colon challenged 199,180 entries, *see supra* n.1, that process alone would take more than 33,000 hours of trial time.  And given that Colon has no personal knowledge about other contractors' deliveries, he would have to call every contractor in the class and every customer involved in every refusal entry—or jeopardize the claims of other contractors by trying them without that important evidence.

The record refutes Colon's assertion that an expert could decide Refusal Claims by looking solely at customer signature data.  Colon has submitted no expert declaration, and there is no evidence that signature data for hundreds of thousands of transactions could be manageably gathered or reviewed.  But even if that were possible, Colon is wrong when he asserts that the existence of a customer signature is conclusive proof that a delivery was completed.  Terri Harrington of SEIDS has testified that a customer signature may or may not reflect a completed transaction because when a customer refuses a delivery, return, or

---

[11] For Order 17211630, SEIDS would cite: a Delivery History dated 2/23/13, which reflects a "Rejection Reason" of "CUSTOMER PREFERENCE"; the Notebook, which states, "**CUST REFUSED**…RTE… 02.23.13"; and a subsequent Delivery History dated 3/8/13 reflecting that the furniture was delivered then (*i.e.*, not on 2/23/13).  *Id.*, Exs. C, D, E (emphasis added).  For Order 17203432EX, SEIDS would cite the Delivery History, which reflects a "Rejection Reason" of "ON ARM," and the Notebook, which states that the furniture had a "TEAR AND HOLE ON RSF ARM," and "**MS REFUSED**" it.  *Id.*, Exs. F, G (emphasis added).  For Order 19887310, SEIDS would cite: the Delivery History, which contains a "Rejection Reason" of "CUSTOMER PREFERENCE"; the Notebook, which states, "Cannot be home:  PLZ PULL THE DEL DATED…CUST WANTS TO RESCH THE DEL"; and a subsequent order for re-delivery of the furniture.  *Id.*, Exs. H, I, J.  For Order 19452913, SEIDS would cite: a Delivery History dated 7/18/15, which reflects a "Rejection Reason" of "RESCHEDULED"; the Notebook, which states, "CUST RESCHEDULED…NO TRANS MADE…RTE 222…7.18"; and a Delivery History dated 7/29/15 reflecting that the furniture was delivered then.  *Id.*, Exs. K, L, M.  For Order 19485727RT, SEIDS would rely on a Sales Order showing that the value of the furniture was $49.99, such that the $9 SEIDS paid Colon exceeded the 2.1% of retail value he says he was owed.  *Id.*, Ex. O.

1675914.1

exchange, contractors still try to obtain a signature to confirm the refusal.[12]  Thus, a customer

signature may appear even when a customer refuses to accept furniture.  Indeed, that is the

case with two of the Colon transactions discussed above—the Delivery Histories for Order

17228047EX and Order 17203432EX both contain a customer signature below the reason the

customer **rejected** the order.[13]  And in any event, even where a customer signature appeared,

SEIDS would be entitled to contest whether a delivery was accepted based on other

documentary evidence or testimony from customers, contractors or employees.

Colon vaguely alleges that he "recalls an instance" when he completed an exchange

for which he should have been paid $30, but SEIDS paid him $9.  (Dkt. No. 46 at 9).  He

cites no date or document despite having all of his settlement sheets.  This supposed instance

is not a class claim because Colon does not allege that he should have been paid "base

compensation percentage," which is an element of the proposed class definition.  *Id.* at 13.

More importantly, this allegation, like his others, turns on individualized proof as to whether

the exchange was completed or refused.  Further, no proof supports Colon's conspiracy

theory that, because it is theoretically possible to change $30 payments to $9 payments in a

computer system, SEIDS may have altered his pay; the only **evidence** on that topic

establishes that SEIDS did not do so.[14]

### C.    There Is No Evidence That Colon Has a Helper Special Claim.

The **only** evidence Colon cites to support his claim that he was not paid for Helper

---

[12] *Id.* ¶¶ 6-7.

[13] *Id.*, Exs. A, F.

[14] Ex. 4 (Harrington Dep.) at 74:17-75:12 ($30 exchange payments are never reduced to $9 refusal payments).
Colon filed the full transcript of the Harrington Deposition under seal on May 18, 2018.  (Dkt. No. S-66).

1675914.1

Specials is his own interrogatory responses.  He writes, "COLON states that his managers were submitting 'specials' to SEIDS for payment but those payments did not show up on his settlement sheets," and cites only to "Colon Verified Answer to Interrogatories; Ex. R." (Dkt. No. 46 at 12 & n.82).  But those interrogatory responses say the **opposite**.  Response 5 states in relevant part:

> These Specials were paid for helping other drivers or doing someone else's deliveries.  Rubin Gonzalez or other employees of SEIDS made statements to me about paying for the Specials.  My manager would then submit the Special to SEIDS for payment.  **The Special payment would then show up on the settlement statement**.[15]

This response thus affirms that Colon **was** paid for Helper Specials.

And in response to an interrogatory asking him to identify every breach of contract by SEIDS, Colon acknowledged that he had no evidence regarding Specials: "See response to Interrogatory #5 and the attached spreadsheet.  The spreadsheet **does not include Specials** which I cannot calculate until I receive additional documents from the Defendant."[16]  That was on September 25, 2017.  Despite the passage of eight months and SEIDS's production of documents relating to his Helper Specials, Colon **still has not identified any Helper Special for which he was not paid**.

> **D.** **The Evidence Regarding Helper Special Claims Is Individualized.**

While there is no evidence in the record that Colon or any class of contractors has

---

[15] Dkt. No. 52-1, Ex. R, Resp. 5 (emphasis added).  Later in the same interrogatory response, Colon alleges (without specificity) that SEIDS failed to pay him for a different kind of special (a Set-Up Special) that involves setting up furniture.  Colon has abandoned any class claim for Set-Up Specials as they are neither encompassed by the proposed class definition nor mentioned in the class motion.

[16] *Id.*, Ex. R, Resp. No. 6 (emphasis added).

1675914.1

8

Helper Special Claims,[17] any such claims would turn on individualized inquiries and proof. First, identifying the Helper Specials that each contractor performed would require a manual review of Specials Forms, texts, and emails specific to each contractor and questioning each contractor and their manager(s) about what Specials were performed.[18] Contrary to Colon's speculation, Specials Forms do not exist for all Helper Specials.[19] Colon fails to submit any proof that there is a manageable way to identify every Helper Special performed by every contractor who worked for SEIDS during the five-year class period.

Even if he had, determining whether each contractor was paid appropriately for each Helper Special would involve unmanageable individual inquiries. Each contractor's weekly settlement sheets would have to be manually reviewed to identify payments for Helper Specials.[20] Then, a jury would have to determine whether each payment was proper or calculate the damages for any alleged non-payment. That would require examining all documents relating to each Special and hearing testimony from each contractor and manager who negotiated each Special about whether the parties agreed on a rate for the Special, what that rate was,[21] whether the contractor actually performed the Special, and the reason for any

---

[17] Colon cites only the testimony of one SEIDS manager (Scott McDowell) that on one unidentified occasion, one unidentified contractor was not paid for a Helper Special. Dkt. No. 46 at 11-12.

[18] *See* Ex. 3 (Harrington Dec.) ¶ 12.

[19] *Id.* ¶ 11 (notice of Helper Specials was communicated to accounting via text and email as well as via Specials Forms); Ex. 4 (Harrington Dep.) at 23 ("they could write up a special form, Special and SetUp Form, or it may be in the form of an e-mail").

[20] Ex. 3 (Harrington Dec.) ¶ 12 (Helper Special payments cannot be culled out electronically).

[21] The rates for Helper Specials varied and were determined in negotiations between individual contractors and SEIDS managers. Ex. 5 (McDowell Dep.) at 45:9-17; *id.* at 39 (amounts paid for Helper Specials "varied" with "different times of the day, how much they were taking, how far they had to drive to meet with the other driver to pick up the pieces"); *id.* at 40:3-11 (describing range of helper pay). (Colon filed the full transcript of the McDowell Deposition under seal on May 18, 2018. (Dkt. No. S-66)). Ex. 4 (Harrington Dep.) at 101 ("there's no set amount for those types of things [helper pay]").

non-payment.[22]   There is no evidence in the record that a jury could manageably perform this exercise for every Helper Special performed by every contractor in the putative class.

## ARGUMENT AND CITATION OF AUTHORITIES

### I.   Colon Bears the Burden of Proof on This Motion.

"A plaintiff seeking class certification bears the burden of satisfying all implicit and explicit requirements of [Rule 23]."[23]   Colon must satisfy this burden with evidence, not assertions about what he thinks he may be able to prove some time down the road: "The party seeking class certification has a burden of *proof*, not a burden of pleading.  He 'must affirmatively demonstrate his compliance' with Rule 23 by proving that the requirements are '*in fact*' satisfied."[24]   As this Court has stated, "Evidentiary proof is required to show compliance with Rule 23."[25]

### II.   Colon Has Failed to Prove His Standing to Assert the Helper Special Claim.

"Prior to certification of a class, and before undertaking any formal typicality or commonality review, 'the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.'"[26]   "[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."[27]   As set forth, *supra*, at 7-8, Colon cites no evidence that he

---

[22] *See* Ex. 3 (Harirngton Dec.) ¶ 13.
[23] *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014).
[24] *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1234 (11th Cir. 2017) (citations omitted).
[25] *Foster v. Green Tree Servicing, LLC*, 2017 WL 5508371, at *3 (M.D. Fla. Nov. 15, 2017) (Whittemore, J.) (citation omitted); *Bussey*, 562 F. App'x at 790 ("class certification is an *evidentiary* question") (emphasis in original).
[26] *Foster*, 2017 WL 5508371, at *3 (*quoting Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).
[27] *Prado-Steiman*, 221 F.3d at 1280 (citation omitted).

1675914.1

performed a Helper Special for which he was not paid.  Absent evidence that he suffered any injury from SEIDS's alleged failure to pay for Helper Specials, Colon has failed to carry his burden of proving standing to assert the Helper Special Claim.

### III.  The Proposed Class Is Not Adequately Defined or Clearly Ascertainable Because Individual Inquiries Would Be Required to Identify Class Members.

"One threshold requirement" for class certification "is not mentioned in Rule 23, but is implicit in the analysis: that is, the plaintiff must demonstrate that the proposed class is 'adequately defined and clearly ascertainable.'"[28]  Thus, "[t]he class definition must contain objective criteria that allow for class members to be identified in an administratively feasible way, meaning a '**manageable process** that **does not require much, if any, individual inquiry**.'"[29]

Here, class members could be identified only through extensive individual inquiries. The proposed class definition requires, in relevant part, that class members be contractors:

e.     who were not paid "Specials" for helping out other drivers by SEIDS;
f.     who were paid $9.00 for a "refusal" rather than their base compensation percentage for a completed delivery, return or exchange in breach of the ELTAs.

(Dkt. No. 46 at 13).

Colon correctly notes that SEIDS can identify the contractors who worked for it during the class period, but that observation does nothing to establish that the proposed class is ascertainable.  Colon's proposed class does **not** consist of all contractors who worked for SEIDS during the class period; it consists only of contractors who were not paid for Helper

---

[28] *Bussey*, 562 F. App'x at 787 (citation omitted) (reversing order certifying class).
[29] *Foster*, 2017 WL 5508371, at *2 (*quoting Bussey*) (emphasis added).

1675914.1

Specials (subpart e) and whose settlement sheets list refusals that were in fact completed deliveries, returns, or exchanges (subpart f). As noted above, Colon fails to prove that there are any contractors who fit these categories.

But even if such contractors did exist, identifying them would require individualized inquiries and individualized merits determinations. To determine if a particular contractor fits subpart e, the Court would have to (1) review Specials Forms, emails, texts, and weekly settlement sheets specific to that contractor and hear testimony from the contractor and his managers regarding whether the contractor performed and was paid for Helper Specials, (2) resolve all factual disputes about those issues, and (3) rule on the merits, *i.e.*, decide whether SEIDS paid for each Helper Special the contractor performed. Only then would the Court know if the contractor is a person who was "not paid 'Specials' for helping out other drivers by SEIDS." (*Id.*).

The same is true for Refusal Claims. To determine which, if any, contractors fit subpart f, the Court would have to (1) review the weekly settlement sheets of each contractor and identify all transactions that are listed as refusals and for which the contractor was paid $9, (2) for each of those transactions, review Delivery Histories, Customer Service Notebooks, Sales Orders, and the testimony of contractors, customers, and employees about whether furniture was refused or accepted, (3) resolve all factual disputes, and (4) decide whether each transaction was, in fact, refused or accepted. Only then would the Court know if a contractor is a person who was "paid $9.00 for a 'refusal' rather than their base compensation percentage for a completed delivery, return or exchange." (*Id.*).

1675914.1

12

Colon has violated the rule that a class definition "not require much, if any, individual inquiry."[30]  Although he bears the burden of proof, he has failed to make any showing, much less an evidentiary showing, that there is a manageable process for identifying class members without extensive individual inquiry.  Blithely noting that SEIDS knows the identities of its contractors does not meet that burden.[31]

Colon is also correct that many of SEIDS's contractors are bound by arbitration clauses that contain class waivers, yet he does not exclude them from the class.  (Dkt. No. 46 at 23).  If a class were certified, SEIDS would move to compel arbitration and those contractors would have to be excluded.[32]

## IV.   Colon Has Failed to Prove Numerosity.

Colon "bears the burden of making some showing, affording the district court the means to make a supported **_factual finding_**, that the class actually certified meets the numerosity requirement."[33]  He has failed to meet this burden.

While Colon correctly notes that hundreds of contractors worked for SEIDS during the class period, that observation is again insufficient to meet his burden.  Again, Colon's proposed class does not consist of all contractors; it consists only of contractors "who were

---

[30] _Bussey_, 562 F. App'x at 787; _see Foster_, 2017 WL 5508371, at *4 (plaintiff failed to show ascertainability where "individual, loan-by-loan, review" was required for approximately 560 files).

[31] _Foster_, 2017 WL 5508371, at *4 ("'A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible.'") (_quoting Karhu v. Vital Pharm., Inc._, 621 F. App'x 945, 948 (11th Cir. 2015)).

[32] _See Kirkpatrick v. J.C. Bradford & Co._, 827 F.2d 718, 725 n.5 (11th Cir. 1987) ("Those purchasers whose 10b–5 claims are subject to arbitration thus could not be considered members of the class.").

[33] _Vega v. T-Mobile USA, Inc._, 564 F.3d 1256, 1267-68 (11th Cir. 2009) (emphasis added) (certification reversed for lack of proof of numerosity as "district court's factual findings must find support in the evidence before it").

not paid" for Helper Specials and "were paid $9.00 for a 'refusal' rather than their base compensation percentage for a completed delivery, return or exchange."  (Dkt. No. 46 at 13).  As set forth above, there is **no evidence** in the record that any group of contractors, much less a sufficiently numerous class of contractors, was not paid for Helper Specials[34] or had a completed delivery, return, or exchange misclassified as a refusal.[35]  As in *Vega*, Colon's claim of numerosity is "an exercise in sheer speculation."[36]

## V.      Colon Has Failed to Prove Commonality.

The two questions Colon identifies as common—"Whether SEIDS incorrectly classified deliveries, returns, or exchanges as refusals on the drivers' settlement sheets resulting in underpayment for those deliveries, returns, or exchanges," and "Whether SEIDS failed to pay drivers for 'Specials' they completed," (Dkt. No. 46 at 15)—do not satisfy the requirement of commonality because they do not have common answers.[37]

Colon himself agrees that a question must be answerable "in one stroke" for all class members to satisfy commonality.  (*Id.* at 14 (*quoting Wal-Mart*, 564 U.S. at 350)).  But that is not true of the questions Colon identifies.  A delivery by Contractor A in 2012 could be correctly classified as a refusal, while a delivery by Contractor B in 2017 could be incorrectly

---

[34] Contractors rarely claimed they were not paid for Helper Specials.  Ex. 5 at 48:1-7 (McDowell estimates he received such complaints once per quarter); *see* Ex. 4 at 120 (Harrington's receipt of such complaints was "definitely not once a week, and I wouldn't even say once a month").

[35] Colon appears to be the only contractor who claims his pay for an exchange was improperly reduced to $9.  Ex. 5 (McDowell Dep.) at 90:1-4; *id.* at 78 ("Q Have you heard any driver complain to you about not getting paid in that scenario?  A. Besides Rich, no.").

[36] 564 F.3d at 1267.  Colon submitted settlement sheets for two weeks of the five-year class period for an unspecified number of other contractors.  Dkt. No. 51-1, Ex. N.  Those sheets simply list the amounts these contractors were paid; they do not show that SEIDS failed to pay any contractor for a Helper Special or that any listed refusal was a completed delivery.  And in any event, there are no $9 refusal entries on these sheets.

[37] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("[w]hat matters" is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation") (citation omitted).

1675914.1

classified as a refusal.  Similarly, SEIDS could have paid Contractor C appropriately for a Helper Special she performed in 2013, but made a mistake in paying Contractor D for a Helper Special he performed in 2016.  The answers to these questions differ depending on facts specific to the different transactions.  Evidence that proves or disproves one claim will not prove or disprove any other claim.[38]  Thus, commonality does not exist.

## VI.    Colon Has Failed to Prove Typicality.

The record contains no support for Colon's assertion that his claims arise out of the same course of conduct as the (theoretical) claims of (theoretical) class members.  He has neither alleged nor proved that SEIDS had a policy of misclassifying all completed deliveries as refusals or of failing to pay for all Helper Specials.  Instead, he alleges that SEIDS got it wrong "in certain instances."  (*Id.* at 8).  But if SEIDS made a mistake in classifying a transaction or paying for a Special, the error was specific to that transaction or that Special.  Colon submits no evidence of a course of conduct that involved all deliveries or all Specials.

Colon is also wrong when he claims that his "incentives are aligned with those of the putative Class members" and that he is "ensuring that [they] are being fairly represented."  (*Id.* at 16-17).  Colon has no incentive to prove the claim of any other contractor.  He can prove his own claims by proving that **he** received $9 for a delivery that was misclassified as a refusal or that **he** was not paid for a Helper Special, but he need not (and will not) prove the

---

[38] *Brown*, 817 F.3d at 1234 ("[c]ommon questions are ones where 'the same evidence will suffice for each member,' and individual questions are ones where the evidence will 'var[y] from member to member'") (citation omitted).

1675914.1

claim of any other contractor in attempting to do so.[39]  That he says he wants to try to prove

claims for other contractors (which could increase his counsel's fees) does not create the

required nexus between his claims and any other contractors' claims.[40]

## VII.    Colon Has Failed to Prove Adequacy.

Colon has submitted no evidence that his counsel will adequately represent the

proposed class.  He asserts that his lawyers are experienced in complex civil matters, but

submits no proof (*e.g.*, the usual declarations) that they have experience prosecuting class

actions or have served as class counsel.[41]

The history of this action establishes that Colon's counsel will not provide adequate

representation.  Despite securing four extensions of the deadline for filing a class certification

motion, Colon's counsel:  did not obtain the documents that they themselves say they need to

prove Colon's claims and the claims of the putative class; proposed a facially invalid class

definition; and submitted no evidence of numerosity.

## VIII.   Colon Has Failed to Prove That Common Questions Predominate.

As set forth above, Colon has failed to identify **any** common questions, much less

common questions that predominate.  The key liability questions in this case—whether each

$9 refusal entry is accurate and whether SEIDS made proper payment for each Helper

---

[39] *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002) (reversing class certification because named plaintiff "ha[d] no incentive to fully litigate those claims not applicable to her").

[40] *Branch*, 2008 WL 11336300, at *3 ("Both the commonality and typicality requirements focus on whether a sufficient nexus exists between the legal claims of the named class representative and those of the individual class members to warrant class certification.").

[41] *See* Fed. R. Civ. P. 23(g) (requiring courts to consider "counsel's experience in handling class actions" in appointing class counsel).

1675914.1

Special—are not "subject to generalized proof."[42]  Instead, answering these questions would require individualized evidence about individual transactions, and the amount of evidence required would expand with each contractor, each refusal entry, and each Helper Special involved in the litigation.  When "plaintiffs must still introduce a great deal of individualized proof…to establish most or all of the elements of their individualized claims, such claims are not suitable for class certification under Rule 23(b)(3)."[43]

Colon's real argument is that predominance exists because SEIDS contractors have standardized contracts and each division of SEIDS has some standardized pay policies.  But that argument misunderstands the predominance requirement.  Common questions predominate only if they have "'a direct impact on every class member's effort to establish liability' that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."[44]  The facts Colon identifies have **no impact** on any contractor's effort to establish liability.  That SEIDS has standardized contracts and some standardized pay policies does nothing to prove that in any particular instance, SEIDS misclassified a completed delivery as a refusal or failed to pay for a Helper Special.  Proof of liability would instead turn on individualized evidence regarding each challenged refusal

---

[42] *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) ("That common questions of law or fact predominate over individualized questions means that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof."); *see Foster*, 2017 WL 5508371, at *5 ("[t]he central issue of liability is therefore not susceptible to class wide proof") (footnote omitted) (citing *Wal-Mart*).

[43] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogation on other grounds recognized*, 706 F. Appx. 529 (11th Cir. 2017); *id.* ("[I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.") (citation omitted).

[44] *Landeros v. Pinnacle Recovery, Inc.*, 692 F. App'x 608, 612 (11th Cir. 2017) (citation omitted).

1675914.1

entry and each challenged Helper Special; thus, individual issues would predominate.

In *Klay*, the Eleventh Circuit rejected certification of a breach of contract claim where, as here, "'[n]o one set of operative facts establishes liability.'"[45]  Predominance did not exist because "even if the plaintiffs [] were to establish that the defendants engaged in some or all of the practices at issue, they would still need extensive individualized proof regarding which plaintiffs have been harmed and in what ways."[46]  The Court distinguished both *Allapattah Services, Inc v. Exxon*, 333 F.3d 1248 (11th Cir. 2003), and *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), cases Colon cites.  In *Allapattah*, once the dealer-plaintiff proved that Exxon secretly eliminated an across-the-board price discount, "each individual plaintiff's breach of contract claim was substantially advanced" since each dealer could prove damages merely by showing that it purchased gas from Exxon.[47]  Likewise, in *Roper*, if the plaintiff proved his claims, then "the same illegal formula was applied to each [class member], and proof of that formula substantially advanced everyone's claims."[48]  No such over-arching issue existed in *Klay* or exists here; proof of Colon's claims would not advance any other contractor's claims.

Colon is correct that contract claims that turn on the "interpretation[] of a form contract" can qualify for class treatment in some cases, but this is not such a case.  (Dkt. No. 46 at 14 (citation omitted)).  The claims of any putative class members here would turn on transaction-specific facts, not any common question of contract interpretation.

---

[45] 382 F.3d at 1266.
[46] *Id.* at 1267.
[47] *Klay*, 382 F.3d at 1266.
[48] *Id.*

1675914.1

18

Colon cannot salvage his bid for class treatment with his bizarre assertion that "[o]nce the class is certified," he could hire an expert to individually audit "each driver's settlement sheet transactions" and to review "any documents showing whether the end customer actually accepted a delivery or exchange which was instead marked as refusal" and any Specials Forms that exist for each contractor. (*Id.* at 20). First, Colon bears the burden of proving, not asserting, that he has "in fact" satisfied the requirements of Rule 23 in order to get a class certified in the first place. *Supra* at 10. But Colon has identified no expert, submitted no expert declaration, and submitted no evidence that his mystery expert would use a viable methodology.[49] Second, Colon is brazenly admitting that resolving the putative class members' claims would require extensive individual inquiries, an admission that defeats predominance. Third, any suggestion that SEIDS would be forced to accept the findings of Colon's hypothetical expert rather than litigate each Refusal Claim and each Helper Special Claim on its individual merits would violate due process.[50]

## IX.  Colon Has Failed to Prove Superiority

Turning this case into a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy."[51] First, Colon has submitted no evidence that there is any controversy between SEIDS and contractors other than himself. No other contractor has sued on a Refusal Claim or Helper Special Claim, and as set forth *supra*, at nn. 34 & 35, the record reflects that few contractors share Colon's complaints. That is

---

[49] Colon has thus given the Court no way to "resolve any challenge to the reliability of information provided by [his] expert," as required. *See Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011).
[50] *See, e.g.*, *Wal-Mart*, 564 U.S. at 367 (violation of due process to certify a class "on the premise that [defendant] will not be entitled to litigate its... defenses to individual claims").
[51] Fed. R. Civ. P. 23(b)(3).

1675914.1

significant because contractors receive weekly settlement sheets showing their pay for each delivery and each Helper Special they perform.  If there were an underpayment, a contractor would be aware of it.  Yet there is no evidence that SEIDS's methods of paying contractors and resolving disputes are so problematic that a class action is necessary.

Second, Colon's own brief makes clear that any contractor who does have a Refusal Claim or Helper Special Claim has a strong "interest[] in individually controlling the prosecution" of that claim.[52]  Colon's complaints, however misguided, are based on his own recollections of deliveries he made or help he provided.  But he has no personal knowledge about work performed by other contractors.  Any other contractors who want to challenge the classification of deliveries they performed or their pay for help they provided would be far better off litigating individually than relying on Colon.  In individual cases, they could apply their own knowledge of the transactions at issue and evaluate the evidence relating to their own actions; they cannot do so in a class proceeding.  Colon's allegation that his damages exceed $9,000 shows that this is not a situation in which low dollar amounts warrant class treatment.  (Dkt. No. 46 at 10).  Further, the contracts at issue provide for the prevailing party to recover attorneys' fees.  (*Id.* at 3-4, Ex. G § 21).

The Court should deny Colon's motion for class certification.

---

[52] Dkt. No. 46 at 22 (*quoting* Fed.R.Civ. P. 23(b)(3)).
1675914.1

20

Respectfully submitted this 23rd day of May, 2018.

/s/ Chad K. Lennon

Jamie Zysk Isani (Florida Bar No. 728861)
Corey Lee (Florida Bar No. 44448)
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-1675
jisani@huntonAK.com
leec@huntonAK.com

Frank M. Lowrey IV (pro hac vice)
Chad K. Lennon (pro hac vice)
BONDURANT MIXSON & ELMORE LLP
One Atlantic Center
1201 West Peachtree Street NW, Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
lowrey@bmelaw.com
lennon@bmelaw.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that this document has been filed using the Court's CM/ECF system, which

will automatically send electronic notice to all counsel of record.

This 23rd day of May, 2018.

/s/  Chad K. Lennon
Chad K. Lennon

1675914.1