# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| RICHARD COLON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SE INDEPENDENT DELIVERY SERVICES INC.,<br><br>Defendant. | Case No. 8:17-cv-1578-JDW-MAP |

### DEFENDANT'S OPPOSITION TO
### PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

More than a year after he filed this action, Plaintiff Richard Colon is engaged in a fishing expedition to try to come up with some factual basis for his allegations against Defendant SE Independent Delivery Services, Inc. ("SEIDS"). As Colon's own testimony shows, he filed this suit without any basis for his allegation that SEIDS underpaid him by misclassifying numerous completed deliveries of furniture as refusals. Now, he belatedly demands burdensome discovery in hopes of finding a basis for that allegation, filing a motion to compel just two days before the discovery cutoff. The Court should reject his demand and deny that motion.

After SEIDS terminated Colon's contract, he and his counsel asked for and received from SEIDS copies of Colon's weekly settlement sheets (which Colon had already been provided during his roughly four years as an independent contractor). As relevant here, those

1691672.1

weekly settlement sheets list two categories of payments: payments for deliveries Colon completed and payments for scheduled deliveries he did not complete, *i.e.*, "refusals." Colon's pay for completed deliveries was generally higher than for refusals.

Nothing on Colon's settlement sheets indicates that any refusal entry is erroneous, *i.e.*, that SEIDS misclassified any completed delivery as a refusal. Colon and his counsel have admitted as much. More than eight months ago, Colon testified as follows regarding refusal entries: "[T]his paperwork right here [a settlement sheet] doesn't explain much. Now, if we had the manifest for that day with the information on it, customer information and everything, I could really break it down better. Then I'll know what happened that day. This particular paperwork doesn't explain much."[1] More recently, Colon's counsel has stated: "Until we see the back ups to the refusals [on the settlement sheets] **we cannot gauge whether they were paid properly**."[2]

Nevertheless, Colon and his counsel decided to shoot first and ask questions (much) later. They went ahead and filed suit, alleging that numerous refusal entries on Colon's settlement sheets are erroneous, hoping to find some basis for that allegation in discovery. The Federal Rules of Civil Procedure do not permit this tactic. A plaintiff may obtain discovery only if he has a factual basis for his claim.[3]

---

[1] Ex. A (Excerpts from November 3, 2017 Deposition of Richard Colon ("Colon Dep.")) at 66-67. (The full transcript of the Colon Deposition is in the record as Exhibit Q to Colon's Motion for Class Certification, *see* Dkt. Nos. 55–58). As Colon now admits, he was wrong about manifests, which simply list scheduled deliveries and do not show whether a delivery was completed or refused. Dkt. No. 46 (Mot. for Class Certification) at 6 ("However, these manifests do not provide any information about whether the delivery was actually delivered, exchanged or refused.").

[2] Dkt. No. 67-2 (May 18, 2018 email from C. Turner) (emphasis added).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff

1691672.1

Perhaps the best evidence that Colon is merely casting about in search of a factual basis is the spreadsheet he sent SEIDS listing the refusal entries about which he now demands discovery. In another seemingly tactical move, Colon did not attach that spreadsheet to his Motion to Compel; SEIDS attaches it here as Exhibit B. As Colon notes, on June 7, 2018, he sent SEIDS a "spreadsheet of all of the refusals with corresponding BATES numbers from the Settlement Sheets again[] asking for any documents that [SEIDS] has to show whether these specific orders were accepted, refused, partially accepted or partially refused by the customer."[4]

What Colon does **not** note is that this spreadsheet contains **575** entries. Colon does not even attempt to explain why he is entitled to put SEIDS to the burden of gathering and producing multiple documents relating to each of these 575 entries. First, the sheer number makes no sense. In his interrogatory responses and his Motion for Class Certification, Colon claimed to be seeking damages for **433** refusal entries, not 575.[5] More to the point, he submitted only **8** refusal entries to the Court with his class motion.[6] SEIDS produced documents relating to those 8 entries, but Colon offers no justification for requiring SEIDS to produce documents for hundreds of additional entries. It appears that Colon has simply decided that he wants to fish in a larger pond.

Second, the burden Colon seeks to place on SEIDS outweighs any claimed benefit.

---

armed with nothing more than conclusions.").
[4] Dkt. No. 68 (Mot. to Compel) at 8.
[5] Dkt. No. 46 (Mot. for Class Certification) at 10 ("COLON reviewed his settlement sheets and believes that SEIDS reduced his pay by marking completed exchanges as refusals approximately 433 times for an estimated damage of $9,093.00").
[6] *Id.*, Exs. I-L (containing 8 entries marked "REFUSAL" for which Colon was paid $9 each).
1691672.1

3

The requested documents would not benefit Colon. As detailed *infra*, at 16-18, SEIDS has now gathered and produced back-up documents for twenty-six refusal entries on Colon's settlement sheets. Those documents confirm that Colon was paid correctly (or overpaid) for twenty-five of the twenty-six refusals. The record, *infra*, at 18, also establishes that it would take a SEIDS employee two weeks of full-time work to gather all the documents Colon belatedly demands. There is no justification for putting SEIDS to that burden, especially when Colon has no basis for the discovery he seeks and is simply casting a net.

The Court should deny Colon's motion because it is procedurally deficient, is untimely, lacks a factual basis, and the discovery he seeks is not proportional to the needs of the case.

## THE PROCEDURAL POSTURE AND HISTORY OF THIS ACTION

### I.   Procedural Posture

On March 30, 2018, Colon moved for class certification, and on May 23, 2018, SEIDS filed its opposition.[7] Colon does not contend that his Motion to Compel has any bearing on his (deficient) Motion for Class Certification. Nor could he—the Motion to Compel relates solely to Colon's own deliveries and not to any transactions involving any other putative class members. (Indeed, by insisting that he needs documents specific to his own deliveries to prove his claims, Colon confirms that each contractor's claims would turn on individualized, not class-wide, evidence.) Thus, the Court should proceed to rule on and deny his Motion for Class Certification.

The discovery cutoff in this case was July 12, 2018, two days after Colon filed his

---

[7] Dkt. No. 46 (Mot. for Class Certification); Dkt. No. 67 (Opposition).

Motion to Compel.[8]

II. **The History of This Action**

The history of this action is a chronicle of Colon flip-flopping in search of a viable claim. On May 31, 2017, Colon filed suit and alleged that he "was to be paid pursuant to the compensation schedule[]" in the Equipment Lease and Truckman's Agreement ("ELTA").[9] He alleged breaches of contract based on SEIDS's supposed failure to pay him for specials, return deliveries, and refusals and its supposed collection of excess insurance premiums. SEIDS moved to dismiss, noting that the ELTA's Compensation Schedule does not include most of the categories Colon identified and that his insurance premium claim was barred by the voluntary payment doctrine.[10]

Colon then amended his complaint and reversed course, alleging that his pay was **not** governed by the Compensation Schedule in the ELTA as written, but instead "as amended orally and/or by course of conduct."[11] He **dropped** the excess insurance premium claim and divided his specials claim into two categories, set-up specials and helper specials.

On November 28, 2017, Colon moved for leave to amend his complaint again, seeking to add a new insurance premium claim and a claim that SEIDS failed to pay him proper bonus compensation. The Court denied that motion on December 21, 2017, stating:

> Plaintiff seeks leave to add additional damages and a new breach of contract claim, but there "seems to be no good reason" why he could not have included these claims earlier in the case. Plaintiff presents no evidence and provides no explanation as to why these claims are absent from previous versions of [the] complaint. "The liberal

---

[8] Dkt. No. 24 (Case Management Order) at 2.
[9] Dkt. No. 2 (Class Action Compl.) ¶ 16.
[10] Dkt. No. 5 (Mot. to Dismiss).
[11] Dkt. No. 13 (Amended Class Action Compl.) ¶ 16.
1691672.1

5

amendment policy of Rule 15(a) does not countenance the old sporting theory of justice or the use of the federal courts as a forum for testing alternate legal theories seriatim."….In sum, Plaintiff fails to show good cause, or any cause at all, for his delay in seeking to include these claims.[12]

On March 30, 2018, Colon filed his Motion for Class Certification, in which he **<u>dropped</u>** his claims relating to return deliveries and set-up specials and limited his motion to claims for refusals and helper specials. Thus, at that point, he had asserted and dropped three claims (return deliveries, set-up specials, excess insurance premiums) and been denied leave to assert two others (new insurance premiums, bonuses) because of his dilatory conduct.

Even after he moved for class certification, Colon continued asserting and dropping claims. Incredibly, he filed a new lawsuit asserting the very claims this Court had denied him leave to add to this action, and he (successfully) moved to transfer that new suit from Judge Covington to this Court.[13] This Court immediately issued a Show Cause Order stating:

> This case is before the Court *sua sponte*. Plaintiff, after having been denied leave to file a third amended complaint in *Colon v. SE Independent Delivery Services, Inc.*, 17-cv-1578-T-27MAP filed a separate lawsuit alleging the same claims he sought to add, which was assigned to the Honorable Virginia M. Covington. That case was transferred to the undersigned, on Plaintiff's motion, under Local Rule 1.04(b).
> Plaintiff is **ORDERED TO SHOW CAUSE** within **eleven (11) days** why this case should not be dismissed for violating the rule prohibiting claim splitting.[14]

Colon voluntarily dismissed the new suit six days later.[15]

Colon has thus put SEIDS and the Court to significant effort and expense in dealing with five claims he has no basis to assert. Among other things, SEIDS had to undertake

---

[12] Dkt. No. 36 (Order) at 2-3 (citations omitted).
[13] *Colon v. SE Independent Delivery Servs., Inc.*, No. 8:18-cv-1034-T-33TGW (M.D. Fla.) ("*Colon II*"), Dkt. No. 1 (Compl.), Dkt. No. 5 (Mot. to Transfer).
[14] *Id.*, Dkt. No. 9 (Order) (citations omitted).
[15] *Id.*, Dkt. No 10.

discovery regarding the now-dropped return deliveries and set-up specials claims and had to investigate all five of the abandoned claims. Colon should not be permitted to put SEIDS and the Court to even more effort and expense with regard to yet another claim for which he lacks a factual basis.

## III. The History of This Discovery Dispute

### A. Colon Testified to His Supposed Need for the Documents at Issue Over Eight Months Ago, on November 3, 2017.

As set forth *supra*, n.1, Colon conceded in his November 3, 2017 deposition that his weekly settlement sheets do not show that any refusal entry is erroneous, *i.e.*, that the transaction in the entry was actually completed. He also repeatedly testified that he would need additional documents to have a basis for that allegation:

> Q. So just looking at that refusal on January 8, 2013, you don't know if that was some kind of a refused exchange or simply a delivery that was refused; correct?
> A. **To really understand that particular day and that refusal I would need the proper paperwork to see it**.[16]
>
> ….
>
> Q. Why is it—
> A. Return deliveries is accurate, I know to be accurate. The refusals, **when I further received documentation then I can really pinpoint everything—then I could verify everything**.[17]
>
> ….
>
> Q. I think I do. And so what you still need to do is go through all these refusals and figure out whether or not the customer signed?
> A. It's not that I won't get nothing. I would get $9 still. Rooms To Go—since this terminology, everything is in a broad word. Refusals can land under so many different categories. **Furthering the documentation, once I receive**

---

[16] Ex. A (Colon Dep.) at 67 (emphasis added).
[17] *Id.* at 222-23 (emphasis added).
1691672.1

**that I could pinpoint. It could be more, it could be less**.[18]

**B.      Colon Failed to Ask for Those Documents Until March 26, 2018.**

Despite Colon's November 3, 2017 deposition testimony and his claim that the documents at issue "go to the very center of [his] case,"[19] he waited almost five more months to ask for them. He did not seek those documents until March 26, 2018—four days before he filed his Motion for Class Certification and almost nine months after he filed this action.[20]

**C.      SEIDS Timely Responded, But Colon Delayed Prosecuting This Dispute.**

On April 25, 2018, SEIDS timely served its Responses and Objections to Plaintiff's Fourth Request to Produce.[21] Despite the supposedly central nature of the documents at issue, Colon waited twelve days to confer with SEIDS.[22] Three days later, SEIDS asked Colon to specify the order numbers for the refusal entries that are the subject of his discovery demands.[23] This request was more than reasonable given the unclear and shifting nature of Colon's claims (and given that the documents he wants cannot be located without order numbers). Colon waited four days to respond and did not specify the refusal entries at issue.[24] Finally, on June 7, 2018—forty-three days after he received SEIDS's objections and responses—Colon sent a spreadsheet specifying 575 refusal entries for which he wants

---

[18] *Id.* at 225-26 (emphasis added).
[19] Dkt. No. 68 (Mot. to Compel) ¶ 20.
[20] Ex. C (Plaintiff's Fourth Request to Produce). Colon's Motion to Compel erroneously states that he served the requests at issue on March 15, 2018. His Motion for Class Certification contains the correct date, stating that "documents showing whether a delivery was accepted or returned have been requested by the Plaintiff pursuant to a Request to Produce served March 26, 2018." Dkt. No. 46 (Mot. for Class Certification) at 7 n.40. Colon attaches to his Motion to Compel a Request with a certificate of service reciting that it was served on March 15, but it was not served then—or if it was, SEIDS did not receive it. The Request to Produce that SEIDS received was served on March 26, 2018, and is attached hereto as Exhibit C.
[21] Dkt. No. 68, Ex. B (Resps. and Objs. to Fourth Request to Produce).
[22] Dkt. No. 68, Ex. C at PAGEID1994-95.
[23] *Id.* at PAGEID1994.
[24] *Id.* at PAGEID1993 ("Thank you for your email, but it does not respond to my question.").
1691672.1

SEIDS to produce multiple documents.

On June 11, SEIDS sent a detailed letter—which Colon also omits from the exhibits to his Motion to Compel, but is attached hereto as Exhibit D—standing on and further explaining its objections to Colon's burdensome requests.

Colon did nothing for more than three weeks. Then, on July 5, 2018, he sent SEIDS a draft Motion to Compel and asked for a conferral on July 9, to which SEIDS agreed. Colon ultimately filed the motion on July 10, two days before the discovery cutoff.

Colon and his counsel knew when they filed this case that they would need documents other than his settlement sheets to support their conjecture that SEIDS misclassified numerous completed transactions as refusals. Yet they did not request those documents when they filed the case or when Colon testified on November 3, 2017, that he needed those documents to prove his allegations. Nor did they diligently prosecute this dispute after SEIDS objected to Colon's discovery requests on April 25, 2018. They did not bring the dispute to the Court until July 10, 2018, seventy-six days later, and two days before the discovery cutoff.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. The Motion to Compel is Procedurally Deficient.

Colon has failed to comply with Local Rule 3.04(a), which requires that

> [a] motion to compel discovery pursuant to Rule 36 or Rule 37, Fed.R.Civ.P., shall include quotation in full of each…request for production to which the motion is addressed; each of which shall be followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party…immediately followed by a statement of the reason the motion should be granted.

Colon does not quote the requests to which the motion is addressed, does not quote SEIDS's objections, and obviously does not follow those (nonexistent) quotations with a statement of reasons why the motion should be granted. He merely attaches SEIDS's objections without addressing them.

Colon's failure to follow the required procedure creates at least two substantive problems. First, the motion does not frame the issues for the Court because it omits SEIDS's objections rather than explain Colon's position on them.

Second, neither SEIDS nor the Court can be certain of the scope of the motion. Colon's Fourth Request to Produce contains three different requests, but the argument in his motion appears to be devoted exclusively to the first request.

Request Number 2 is an absurd demand for "all Blue Vista data that references COLON, his deliveries, exchanges, refusals, specials or returns."[25] Blue Vista is SEIDS's internal computer system. Essentially, Colon asks SEIDS to produce every electronic document that mentions him or any furniture he delivered or attempted to deliver over the course of almost four years—without regard to whether the document has anything to do with the claims in this case. (Colon made thousands of deliveries for which he does not allege he was underpaid). The motion contains no discussion of this request and no justification for compelling further production in response to it. Likewise, the motion contains no discussion of or justification for compelling further production in response to Request Number 3, which relates to policies and procedures.

The Court should deny Colon's Motion to Compel for failure to comply with Local

---

[25] Dkt. No. 68, Ex. A at 2.

1691672.1

Rule 3.04(a). *Southern Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn*, 2012 WL 12905615, at *1 (M.D. Fla. Mar. 6, 2012), is on point:

> The Court finds that Plaintiffs have failed to comply with Local Rule 3.04(a). Plaintiffs have not quoted which request for production the motion is addressed to and have failed to quote the objections and grounds as stated by the Defendants in the Response to the Request for Production and argue to the Court why it should compel the Defendants to respond. The Plaintiffs' failure to comply with the Local Rules is fatal to its request and the Motion is due to be denied.

This Court reached the same result in *Cashman v. Host International, Inc.*, 2010 WL 11507475, at *1 (M.D. Fla. Nov. 5, 2010) (Pizzo, J.) (denying motion to compel where it "fails to comply with Local Rule 3.04(a)").[26]

## II. The Motion to Compel Is Untimely.

Colon's delays in seeking the documents at issue and prosecuting this discovery dispute, detailed *supra*, at 7-9, also warrant denial of his Motion to Compel. The facts here are similar to those in *Malibu Media, LLC v. Weaver*, 2016 WL 473133 (M.D. Fla. Feb. 8, 2016). In that case, "[d]espite conferring in mid-November of 2015, [the movant] waited until the day before the discovery deadline was set to lapse [January 7, 2016] to file his motions to compel."[27] Judge McCoun "found that [the movant] failed to provide a 'reason or good cause for the delay in bringing the motions.'"[28] Judge Covington rejected the movant's objections to that ruling, holding that granting the motions to compel would resulted in a *de facto* extension of the discovery deadline and that the movant "presented no justifying reason

---

[26] *See also, e.g.*, *D'Aprile v. UNUM Life Ins. Co.*, 2010 WL 2757408, at *1 (M.D. Fla. July 13, 2010) (denying motion to compel for failure to comply with Local Rule 3.04(a)).
[27] *Malibu Media*, 2016 WL 473133, at *2.
[28] *Id.* at *1.

to the Court for doing so."[29]

Colon's delay is more egregious. He waited almost nine months after filing this action to request documents that he now says are central to his claims (May 31, 2017 to March 26, 2018). He waited almost five months to request those documents after testifying that he had no basis for his claims without them (November 3, 2017 to March 26, 2018). And he allowed seventy-six days to lapse between the time he received SEIDS's objections and the time he filed his motion to compel (April 25, 2018 to July 10, 2018), including the last three weeks of the discovery period in which he simply sat on his hands. Colon does not acknowledge, let alone explain or justify, any of these delays. He has "not provide[d] sufficient justification for failing to file a motion to compel or otherwise appropriately address Defendant's production or objections" until two days before the close of discovery.[30]

Colon's delay is not merely a technical failure. If the Court were to grant the motion to compel, SEIDS would have to (1) search for and produce documents outside the discovery period, (2) await Colon's supplementation of his responses to SEIDS's interrogatories asking him to specify each breach of contract he alleges and the basis for each allegation, and (3) move for an extension of the (August 10, 2018) deadline for filing dispositive motions because the final scope of Colon's claims would be unclear. Colon simply ignores the effect his delays would have on the schedule in this case.

As this Court stated in *BB&T Co. v. Shirley Investment Properties*, 2013 WL 12158612, at *1 (M.D. Fla.) (Pizzo, J.), "[t]his district follows the rule that the completion

---

[29] *Id.* at *2.
[30] *Oil Consulting Enter. v. Hawker Beechcraft Glob. Customer Support, LLC*, 2017 WL 7355128, at *1 (M.D. Fla. Dec. 21, 2017).

date for discovery means just that—*all discovery must be completed by that date*." (Emphasis in original).[31] In *BB&T*, the defendants waited sixty days after receiving discovery responses "to seek Court intervention regarding Plaintiff's allegedly deficient discovery responses."[32] This Court denied the defendants' motions to compel, stating, "Simply put, [the defendants] waited too long to complain."[33] The same is true here: This dispute is being resolved outside the discovery period because Colon delayed seeking documents and court intervention. The Court should deny his motion.

### III. The Federal Rules Do Not Permit Colon to Undertake a Fishing Expedition to Search for Proof of a Claim He Asserted Without Any Factual Basis.

It is well-settled that a plaintiff must have a factual basis for a claim in order to put a defendant to the burden of discovery. As this Court has stated:

> Rule 11, Federal Rules of Civil Procedure, provides that "[b]y presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," and that, among other things, "the claim[]...and other legal contentions are warranted by existing law...," and "**the factual contentions have evidentiary support**..." Fed. R. Civ. P. 11(b). The Rules of Civil Procedure do not contemplate that a plaintiff may file a complaint rife with conclusory and speculative allegations, **hoping to find data and evidence to support the allegations through subsequent discovery**.[34]

Discovery "is not intended to allow a plaintiff to go on a fishing expedition to see if the

---

[31] *See also Oil Consulting*, 2017 WL 7355128, at *1 ("[F]iling a substantive motion to compel on the last day of discovery does not comply with the policy of the Middle District of Florida for the completion of discovery and the resolution of issues related to discovery prior to the discovery deadline. Instead, '[m]otions to compel must be brought in a timely manner.'") (citation omitted).
[32] 2013 WL 12158612, at *1.
[33] *Id.*
[34] *Moss v. Liberty Mut. Fire Ins. Co.*, 2017 WL 4676629, at *7 (M.D. Fla. Aug. 18, 2017) (emphasis added) (*citing Iqbal*, 556 U.S. at 678-79).

speculative complaint that he has filed has any basis in fact."[35]

Yet that is precisely what Colon is doing. He filed this action without any evidentiary support for his conjecture that SEIDS misclassified numerous completed deliveries as refusals. The sole "basis" he cites for that allegation is a conspiracy theory he concocted out of whole cloth. Colon speculates that, because it is theoretically possible for SEIDS to alter pay rates in its computer system, the company reduced $30 payments for his completed exchanges to $9 payments for refusals if a customer later exchanged or returned the furniture Colon delivered.[36] This theory has no basis in reality. Colon does not identify a single transaction in which he made an exchange and the customer later returned the furniture, much less one in which his pay was reduced in the computer system.

Terri Harrington, the Accounting Manager for the SEIDS division in which Colon worked, provided **unrebutted** testimony that $30 exchange payments were never reduced to $9 refusal payments:

> Q. Okay. They do the exchange and then a day later the customer calls up and says I want another exchange, I don't like the color of the one that was just delivered, okay?
> A. Yes.
> Q. Are you with me? The driver that did that initial exchange that was paid $30, how are -- do they keep their $30 if they are -- if that sofa is later exchanged again –
> A. Absolutely.
> Q. -- a day later?
> A. Absolutely.

---

[35] *Centrifugal Air Pumps Austl. v. TCS Obsolete, LLC*, 2011 WL 1627167, at *2 (M.D. Fla. Apr. 29, 2011) (*quoting Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1329 n.16 (S.D. Fla. 2011) (citation and internal quotation marks omitted)); *see also, e.g.*, *Belik v. Carlson Travel Grp., Inc.,* 864 F. Supp. 2d 1302, 1314 (S.D. Fla. 2011) ("Plaintiff's attempt to reverse the logical sequence in litigation—claim first, discovery later—is unavailing.").

[36] Dkt. No. 68 (Mot. to Compel) ¶¶ 16-17 (outlining this theory and citing no evidence that any pay rate was actually changed); Dkt. No. 46 (Mot. for Class Certification) at 10 (same).

1691672.1

> Q. So that's not ever reduced to a refusal?
> A. No.
> Q. Okay. Or reduced to nine dollars?
> A. No.[37]

Colon's attempt to make something out of a supposed statement by Harrington that SEIDS pays $9 "when a job ain't completed" is bizarre. Colon himself agrees that he was to be paid $9 for refusals,[38] and that he was entitled to higher base compensation only for deliveries "which the customer accepts."[39] In other words, he agrees that he was to be paid $9 if a job was not completed. Further, Colon acknowledges that SEIDS was **overpaying** him for exchanges: as he states, the contract (the ELTA) calls for a payment of $16.96 per exchange, but SEIDS paid Colon $30 for exchanges.[40] The bottom line is that there is no basis for Colon's claim that numerous refusals were misclassified and no basis for him to put SEIDS to the burden of further discovery regarding that allegation.

### IV. The Requested Discovery Is Not Proportional: The Burden Outweighs the Supposed Benefit.

As this Court stated in *Sardis v. Home Depot, U.S.A., Inc.*, 2017 WL 3723618, at *1 (M.D. Fla. Apr. 19, 2017) (Pizzo, J.), "Discovery under the Federal Rules is governed by the principle of proportionality." Here, the requested discovery is not proportional because the burden outweighs any supposed benefit.

---

[37] Dkt. No. 67-4 (Excerpts from Deposition of Terri Harrington ("Harrington Dep.")) at 74-75. Colon filed the full transcript of the Harrington Deposition under seal on May 18, 2018. (Dkt. No. S-66).
[38] Dkt. No. 68 (Mot. to Compel) ¶ 6 ("SEIDS paid the [contractors] in COLON's territory $9.00 for a 'refusal of goods' rather than the $0.00 described in the compensation schedule").
[39] *Id.* ¶ 8; *id.* ¶ 3 (base compensation is paid for a delivery only "if accepted by the customer"). Despite having all of his settlement sheets, Colon fails to specify the exchange to which Harrington was supposedly referring.
[40] *Id.* ¶ 5.
1691672.1

15

First, with respect to "the importance of the discovery" and its "likely benefit,"[41] the documents at issue will likely be of no benefit to Colon because they will confirm that the refusal entries on his settlement sheets are correct. SEIDS has now searched for and produced the back-up documents for twenty-six refusal entries on Colon's settlement sheets. Those documents confirm that Colon was paid appropriately for twenty-five of the transactions (96%). SEIDS acknowledges that there is doubt about one transaction, the Flournoy transaction that Colon discusses in his motion.[42]

SEIDS has undertaken the following efforts: When Colon filed his Motion for Class Certification, he submitted settlement sheets containing eight refusal entries for which he was paid $9.[43] As Colon acknowledges in his Motion to Compel, SEIDS searched for and produced four back-up documents for each of those entries: the delivery history, the customer service notebook, the sales order, and the check-in report.[44] In addition, when Colon filed his Motion to Compel, SEIDS's counsel selected a sample of twenty refusal entries from Colon's spreadsheet (simply picking every thirtieth entry on the spreadsheet) and asked Harrington to pull the same four back-up documents for each entry.[45] SEIDS has now produced those documents to Colon.

The results for the twenty-six refusal entries are summarized in the chart attached as

---

[41] Fed. R. Civ. P. 26(b)(1).
[42] The customer service notes for the Flournoy transaction (which SEIDS has produced) reflect some confusion about whether and when the furniture was delivered. Significantly, Colon was able to develop evidence to support his position that the furniture was delivered (an affidavit) without the broad, burdensome discovery he now demands from SEIDS.
[43] *Supra* n.6.
[44] *See* Dkt. No. 67-3 (May 23, 2018 Declaration of Terri Harrington), Exs. A-O (attaching most of these documents to SEIDS's Opposition to Colon's Motion for Class Certification).
[45] Ex. E (July 19, 2018 Declaration of Terri Harrington) ¶¶ 3-4.
1691672.1

Exhibit F to this Opposition and are as follows:[46] (1) For twenty-three of the entries, the back-up documents confirm that the scheduled delivery was not completed, such that $9 was the proper payment; (2) for one entry, the $9 that Colon was paid was more than the base compensation he claims he was owed (2.1% of retail value) because the retail value of the item was $49.99; (3) one entry that Colon lists on his spreadsheet is a gift card transaction, not a delivery; and (4) there is doubt about one transaction (Flournoy).[47]

Colon's refusal to accept what the documents show is astonishing. In his Motion to Compel, Colon argues that the back-up documents for entry 17203432EX contain a customer signature and thus that he should have been paid $30 for a completed exchange rather than $9 for a refusal.[48] But he ignores the following facts, all of which demonstrate that the delivery was in fact refused:

- the customer signature is on a document that contains a "**Rejection Reason**" of "ON ARM,"[49]

- the customer service notes expressly state that "MS **REFUSED**" the delivery because "ACCENT CHAIR RECEIVED WITH TEAR AND HOLE ON RSF ARM,"

- the notes reiterate a second time that "CUST[OMER] **REF[USED]**" the delivery,

- the customer asked for store credit,[50] and

- the check-in report shows that the accent chair was checked back into the warehouse, not delivered to the customer.[51]

---

[46] The total number of entries is twenty-six rather than twenty-eight because two of the original eight entries from the class certification motion and one of the recently sampled entries (coincidentally) relate to the Flournoy transaction.
[47] The documents cited in the chart (Exhibit F) are attached hereto as Exhibit I.
[48] Dkt. No. 68 (Mot. to Compel) ¶ 33.
[49] Ex. G (delivery history) (document also in the record at Dkt. No. 67-3 (May 23, 2018 Harrington Dec.), Ex. F) (emphasis added).
[50] Ex. H (customer service notes) (also in the record as Dkt. No. 68 (Mot. to Compel), Ex. E) (emphasis added).
[51] Dkt. No. 68 (Mot. to Compel), Ex. G.

1691672.1

These facts all show the fallacy in Colon's apparent assumption that a customer signature is conclusive proof that a delivery was accepted. Further, Harrington provided express, unrebutted testimony that contractors attempt to obtain signatures from customers even when a delivery is refused, as proof that the contractor went to the delivery location.[52]

Colon cannot establish that the documents at issue will be helpful to him by pretending that they say deliveries were accepted when they actually say that deliveries were refused. The record establishes that it is extraordinarily unlikely that the documents he demands will be of any benefit to him.

Second, the "burden or expense of the proposed discovery outweighs its likely benefit."[53] Harrington testified that it took her 160 minutes to search for and pull the four documents Colon demands (delivery history, customer service notebook, sales order, check-in report) for nineteen refusal entries on his spreadsheet: an average of 8.4 minutes per entry.[54] Thus, the record reflects that it will take more than 80 hours for SEIDS to gather the documents at issue (575 entries x 8.4 minutes = 4,830 minutes; 4,830 minutes = 80.5 hours). There is no reason that a SEIDS employee should have to spend two full work-weeks pulling these documents when the record reflects that the production of these documents will almost certainly be no benefit to Colon.

Such effort is also unwarranted because, as set forth *supra*, n.5, Colon is claiming total damages of $9,093. SEIDS has already spent far more than that amount complying with

---

[52] Dkt. No. 67-3 (May 23, 2018 Harrington Dec.) ¶ 6.
[53] Fed. R. Civ. P. 26(b)(1).
[54] Ex. E (July 19, 2018 Harrington Dec.) ¶ 4.
1691672.1

Colon's previous discovery requests in this case; it should not have to bear the additional cost of paying a full-time employee to spend two weeks meeting further, belated discovery demands (particularly when Colon has forced SEIDS to address five now-dropped claims and been proved wrong almost every time on his remaining claims).

The Court should deny Colon's Motion to Compel.

Respectfully submitted this 23rd day of July, 2018.

/s/ Chad K. Lennon

Jamie Zysk Isani (Florida Bar No. 728861)
Corey Lee (Florida Bar No. 44448)
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-1675
jisani@huntonAK.com
leec@huntonAK.com

Frank M. Lowrey IV (pro hac vice)
Chad K. Lennon (pro hac vice)
BONDURANT MIXSON & ELMORE LLP
One Atlantic Center
1201 West Peachtree Street NW, Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
lowrey@bmelaw.com
lennon@bmelaw.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that this document has been filed using the Court's CM/ECF system, which will automatically send electronic notice to all counsel of record.

This 23rd day of July, 2018.

/s/ Chad K. Lennon
Chad K. Lennon
